UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 1 8 2002

MARK WACHHOLZ, as Administrator )
of the Estate of Alex Wachholz, )
on his behalf and on behalf of his wife, )
JILL WACHHOLZ and his children, )
MEGAN WACHHOLZ and )
MARLEIGHA LOSSIN, minors, )
and as father and next friend of )
MEGAN WACHHOLZ, )
              Plaintiffs, )
   v. )   NO. 01 C 0698
               )
LEVOLOR HOME FASHIONS, INC.; )   Judge Robert W. Gettleman
NEWELL WINDOW FURNISHINGS, INC. )
LEVOLOR HOME FASHIONS, a division of )   Magistrate Judge Geraldine Soat Brown
Newell Window Furnishings, Inc.; and )
HABITAT WALLPAPER AND )
BLINDS, INC., )
             Defendants. )

FILED
NOV 12 2002
MICHAEL W DOBBINS
UNITED STATES DISTRICT CLERK
DISTRICT COURT

## NOTICE OF MOTION

TO:   Joseph J. Krasovec III,
      Dan Overbey
      Schiff, Hardin & Waite
      Sears Tower, #6600
      Chicago, IL 60606
      VIA FAX: 312/258-5600

      On **November 15th**, 2002, at 9:45 a.m., or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Magistrate Judge Geraldine Soat Brown** or any judge sitting in her stead in the courtroom usually occupied by her in Room 1812 of the United States District Court, 219 South Dearborn Street, Chicago, Illinois and present **"Motion To Compel And For Sanctions"**

| Name: | James E. Dahl & Associates | Attorney For: | Plaintiffs |
|---|---|---|---|
| Address: | 225 West Washington St., #1125 | City: | Chicago, IL 60606 |
| Telephone: | 312/641-3245 | | |

### AFFIDAVIT OF SERVICE BY FACSIMILE AND MAIL

      The undersigned, being first duly sworn on oath, states that she served a copy of the above-referenced document on the above-named attorneys of record by facsimile and by placing in the U.S. Mail chute at 225 West Washington Street, Chicago, Illinois on November 12, 2002.

                                                                     /s/ Shari Santelli

[x]   Under penalties as provided by law pursuant to
      735 ILCS 5/1-109, I certify that the statements
      set forth herein are true and correct.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK WACHHOLZ, as Administrator )
of the Estate of Alex Wachholz, )
on his behalf and on behalf of his wife, )
JILL WACHHOLZ and his children, )
MEGAN WACHHOLZ and )
MARLEIGHA LOSSIN, minors, )
and as father and next friend of )
MEGAN WACHHOLZ, )
               Plaintiffs, )
v. ) NO. 01 C 0698
)
LEVOLOR HOME FASHIONS, INC.; ) Judge Robert W. Gettleman
NEWELL WINDOW FURNISHINGS, INC. )
LEVOLOR HOME FASHIONS, a division of ) Magistrate Judge Geraldine Soat Brown
Newell Window Furnishings, Inc.; and )
HABITAT WALLPAPER AND )
BLINDS, INC., )
               Defendants. )

**DOCKETED NOV 1 8 2002**

**FILED NOV 1 2 2002 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT**

## NOTICE OF FILING

TO:   Joseph J. Krasovec III
Dan Overbey
Schiff, Hardin & Waite
Sears Tower, #6600
Chicago, IL 60606
VIA FAX: 312/258-5600

PLEASE TAKE NOTICE that we have this 12th day of November, 2002, filed with the Clerk of the United States District Court, Illinois, the following: **"Motion To Compel And For Sanctions"**

JAMES E. DAHL & ASSOCIATES
225 West Washington Street, Suite 1125
Chicago, Illinois 60606
312/641-3245

                      _James E. Dahl & Associates_
                      Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE BY FAX AND MAIL

The undersigned, being first duly sworn on oath, states that she served the foregoing document on the above-named attorneys of record by facsimile and by placing a true and correct copy in the U.S. Mail chute at 225 West Washington Street, Chicago, Illinois on November 12, 2002.

SUBSCRIBED AND SWORN
to before me this 12th day of
November 2002

_Lisa M. Odeh_
NOTARY PUBLIC

OFFICIAL SEAL
LISA M. ODEH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-10-2004

67

MARK WACHHOLZ, as Administrator )
of the Estate of Alex Wachholz, )
on his behalf and on behalf of his wife, )
JILL WACHHOLZ and his children, )
MEGAN WACHHOLZ and )
MARLEIGHA LOSSIN, minors, )
and as father and next friend of )
MEGAN WACHHOLZ, )
                    Plaintiffs, )
v. )    NO. 01 C 0698
 )
 )    Judge Robert W. Gettleman
LEVOLOR HOME FASHIONS, INC.; )
NEWELL WINDOW FURNISHINGS, INC. )    Magistrate Judge Geraldine Soat Brown
LEVOLOR HOME FASHIONS, a division of )
Newell Window Furnishings, Inc.; and )
HABITAT WALLPAPER AND )
BLINDS, INC., )
                    Defendants. )



## MOTION TO COMPEL AND FOR SANCTIONS

Plaintiff, Mark Wachholz, as Administrator of the Estate of Alex Wachholz, by and through his attorneys, James E. Dahl and Paul N. Bonadies, respectfully request this Court to enter an order compelling defendants to respond to certain interrogatories and requests for production of documents. In support of this motion, plaintiff states as follows:

1. As this Court is aware, this is a product liability action based on the alleged death of a 4 year old boy from strangulation on the looped pull cord of a window blind manufactured by defendants. The defendants have admitted that the blind at issue was manufactured by Levolor Home Fashions, a division of Newell Window Furnishings Inc.

1

in August 1995 (Attached as Exhibit A is defendants' response to plaintiff's Request to Admit number 2).

2. Since the entry of this court's discovery order, the parties have been diligent in pursuing discovery. Additional documents were produced pursuant to Plaintiff's Request for Production of Documents and (11) eleven depositions have been completed.

3. On October 23, 2002, plaintiff took the deposition in Buffalo, New York of Levolor's product manager, Mr. Mark Weppner. Mr. Weppner was the product manager of Levolor Home Fashions for the period of January 1994 to April 1997. His term of employment coincided with the time that the blind at issue was manufactured.

4. At this deposition, it became apparent that the defendants have failed to adequately answer interrogatories and produce relevant documents to the plaintiff.

### A. Defendants Have Not Produced All Discovery Concerning The Design And Development Of Devices To Eliminate Looped Pull Cords

5. Obviously, some of the issues in this litigation are the efforts, if any, made by the defendants in addressing the alleged dangerous condition of the looped pull cord. In its written discovery to the defendants, the plaintiff asked the following questions and were given the following responses by the defendants:

> 12. For the period of 1980 to the present, state whether Levolor or anyone on behalf of Levolor has tested and/or studied any devices or methods to reduce access to or eliminate cord loops from window blinds. If so, for each device or method, state as follows:

2

a. the name of the device and/or method;
b. the dates that Levolor became aware of the device and/or method;
c. the test/study number;
d. the test/study title;
e. the testing/study dates;
f. the identity of the person conducting the test/study;
g. the purpose of the test/study;
h. the make and model of the blind tested/studied; and
i. the Levolor office, department, section, committee and/or individuals requesting the test/study.

ANSWER: Levolor objects to this interrogatory on the grounds set forth in the preliminary paragraphs of this response and on the further grounds that it is overly broad, unduly burdensome, and requests information outside the scope of the current litigation. Levolor specifically objects to the use of 1980 as an arbitrary cut-off date. Subject thereto, Lèvolor directs Plaintiffs to the documents produced in response to Requests to Produce No. 5.

13. State whether Levolor or anyone on behalf of Levolor designed and/or developed any device or method to reduce access or eliminate cord loops from window blinds. If so, for each design and/or method identify the following:

a. the name of the device and/or method;
b. the date of the design and/or method; and
c. the individual, group and department of Levolor responsible for the design, testing, production or marketing of the device and/or method.

ANSWER: Levolor objects to this interrogatory on the grounds set forth in the preliminary paragraphs of this response and on the further grounds that it is overly broad, unduly burdensome and requests information outside the scope of the current litigation. Subject thereto, Levolor directs plaintiffs to the documents produced in response to Request to Produce No. 5.

14. State whether Levolor ever considered, implemented and/or utilized any of the following devices for window blinds: cord release device, cord stop, tension device, cord retraction device, cord shroud, cord shear, and individual tassel cords. If so, for each device, state as follows:

a. the purpose of the device;
b. the date that Levolor first considered, implemented or utilized the device;
c. identify the model/make of the blind.
d. whether Levolor or anyone on Levolor's behalf conducted any tests or studies of the device. If so, identify the following:

   1. the test/study number;
   2. the test/study title;
   3. the testing/study dates;
   4. the identity of the person conducting the test/study;
   5. the purpose of the test/study; and
   6. the Levolor office, department, section, committee and/or individuals requesting the test/study.

e. whether Levolor implemented and/or included any of these devices with the distribution of the Levolor Custom Wood Blind. If so, identify the dates the devices were included and the identity of each device.

ANSWER: Levolor objects to this interrogatory on the grounds set forth in the preliminary paragraphs of its response and on the further grounds that overly broad, unduly burdensome, and requests information that is beyond the scope of this litigation. Levolor further objects to the term "considered" as vague and ambiguous. Subject thereto, Levolor directs Plaintiffs to the documents produced in response to Request to Produce No. 5.

(Attached as Exhibit B is a copy of defendants' response to plaintiff's Interrogatories).

6. At Mr. Weppner's deposition, Mr. Weppner was asked about the design and development of devices concerning the elimination of the loop from pull cords. Mr. Weppner testified as follows:

4

Q. Do you know whether or not Levolor ever requested a third party vendor to develop or design a device that could eliminate the loop?

A. Core Design, and there's another firm in Charlotte and I don't remember their name right now.

* * *

Q. Do you know what sort of devices they were asked to

A. Yes.

Q. What were they?

A. They were devices that would release a cord under a specified pressure and shape.

Q. Do you know whether they ever came up with any design?

A. They developed several concepts.

Q. Can you describe to me what they were just so I can understand the concept?

A. Several of them were centered around the principal that the multiple cords or even two cords would be held on a device and should a -- I'm not speaking as an engineer here, but should a force come down, it would separate the cords under a certain pressure and also based upon what the shape was. So the departure angles, you know, were one of the specifications.

There were also devices like wind ups that would encase the cords in a shroud so that no loops could be accessed.

(Attached as Exhibit C are pages 106-108 from Mr. Weppner's deposition transcript).

7. At no time, since this written discovery was issued, have the defendants ever identified Core Design or the "other entity" in Charlotte, North Carolina that was involved in designing, testing and developing devices for Levolor to eliminate loops from

5

pull cords. Furthermore, plaintiff is unaware of any documents that have been produced by the defendants which would identify these entities.

8. There is absolutely no doubt that this is extremely relevant information in a case in which it is alleged that a 4 year old boy died as a result of strangulation from a looped pull cord.

### B. Defendant Newell Window Furnishings Inc. Has Failed To Produce Discovery

9. As stated above, the defendants have admitted that the blind at issue was manufactured by Levolor Home Fashions, a division of Newell Window Furnishings Inc. in August 1995.

10. In written discovery, the plaintiff requested that the defendants explain the relationship between defendant Levolor and defendant Newell Window Furnishings Inc. The plaintiff received the following response from the defendants:

> 6. Explain with particularity the relationship between Newell Window Furnishings, Inc and its division known as Levolor Home Fashions (the explanation should include all relevant dates).
>
> ANSWER: On April 30, 1993, Newell Operating Company ("NOC") purchased certain assets and assumed certain liabilities relating to window coverings of Levolor Company. In November, 1994, NOC transferred these assets and liabilities to NOC's subsidiary; Newell Window Furnishings. Thereafter, Newell Window Furnishings used these assets to operate the Levolor Home Fashions division of Newell Window Furnishings.

(Attached as Exhibit D is a copy of Defendants' Response to Plaintiffs' Second Set of Interrogatories)

11. At Mr. Weppner's deposition, it was discovered that defendant, Newell Window Furnishings, Inc. was also manufacturing its own window blinds and studying and evaluating safety devices separate and apart from Levolor. (See pages 125-128 of the deposition transcript of Mark Weppner attached as Exhibit E).

12. No where in any responses to the answers to interrogatories or in response to the production of documents did the defendants identify devices and designs that were studied by Newell Window Furnishings, Inc. Furthermore, it appears that the defendants have not had Newell Window Furnishings Inc. gather any information concerning this litigation. As of this date, there has been no identification of any individuals from Newell Window Furnishings who were involved in the design, testing, and evaluation of safety devices for the blinds nor have documents been produced by Newell Window Furnishings, Inc relative to those issues.

13. This information is extremely relevant because Newell Window Furnishings owned and operated Levolor at the time the blind was manufactured and according to the defendants, Levolor was not a separate company from Newell Window Furnishings Inc.

14. Pursuant to Local Rule 37.2, the plaintiff's counsel has had several discussions with defendants' counsel concerning the lack of defendant's response to discovery.

15. It is the defendants position that they tendered plaintiff's written discovery to Mr. Roger Palmer, the head of New Product Development for Levolor, and those were the responses he gave.

7

16. However, Mr. Palmer was not qualified to prepare the responses to the discovery. Mr. Palmer testified that he had not started with Levolor until February of 1998 and when asked about his efforts in answering the interrogatories, Mr. Palmer stated as follows:

> Q. With respect to Exhibit 4, which is the initial Answers to Interrogatories, do you recall answering those questions?
>
> A. Yes.
>
> Q. Can you identify any individuals from Levolor or Newell that you consulted with in order to answer these questions?
>
> A. It was primarily myself. I believe Aaron Marshall helped in answering some of the questions.
>
> Q. Was there any other individuals that you recall?
>
> A. No one else springs to mind.

(Attached as Exhibit F are pages 43-44 of Mr. Palmer's deposition transcript). At his deposition, Mr. Marshall testified that he has only been employed with Levolor since June/July 2000.

17. Accordingly, although the blind was manufactured in 1995, it is the defendants position that they have sufficiently satisfied their requirements to answer discovery by tendering the discovery to an employee who only started with Levolor in 1998 and who only consulted with one other employee who started with Levolor in June/July of 2000. There is no doubt that Mr. Palmer had no knowledge base in which to adequately answer plaintiff's discovery.

18. Such a lack of effort clearly establishes that defendants have not taken plaintiff's discovery seriously. In fact, it is this lack of effort that has led to the failure of the defendants to identify the testing and design facilities used by Levolor in analyzing safety devices for blinds. Whether this was intentional or just careless on the part of the defendants is unknown. However, as a result of defendants' conduct, the plaintiff has incurred an enormous cost in traveling the country and deposing individuals without the benefit of this discovery.

19. This is a situation that is analogous to the case of Hogue v. Fruehauf Corporation, 151 F.R.D. 635 (C.D. Illinois 1993). In Hogue, the plaintiff sustained injuries caused by a sliding tandem problem occurring with tractor trailers manufactured by the defendant. The plaintiff requested information from the defendant on claims arising out of injuries caused by a product similar to the product used by the plaintiff. From Dec. 1987 to July of 1992, defendant did not inform the plaintiff of any accidents similar to the plaintiff's accident and produced four test reports. In July of 1992, plaintiff discovered a National Highway Traffic Safety Administration letter referring to a sliding tandem problem with defendant's tractor trailers. As a result, plaintiff filed a motion for sanctions which led to defendant producing a file disclosing a NHTSA investigation. The court granted plaintiff's motion for costs and entered a default against the defendant.

20. The reasons given by the defendant in not complying with discovery were: (a) lack of corporate communication; (b) file retention policy; (c) distinction between complaints, and (d) inadequate staffing and resources with the defendant's legal department. In response the court stated as follows:

9

> It is clear that [defendant] violated the Federal Rules of Civil Procedure by either knowingly or recklessly filing false or incomplete answers to written discovery requests served by plaintiff. Whether the violations were intentional and the information provided was then consequently false as opposing to Fruehauf recklessly disregarding is duty to provide the proper answers in discovery is for the purposes of this motion immaterial. It was one or the other. *Id* at 637 . . .
>
> The Court finds that the people involved here were in a position to gather information concerning prior incidents or prior claims, maintain and preserve the information, and make some serious effort to see that the responses given to discovery requests were both accurate and complete.
>
> The very integrity of the civil justice system depends on compliance with the discovery rules. Discovery cannot be a game of hide-and-seek. Our discovery system depends in large part on self-reporting. When discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully.
>
> The magnitude and type of interference with the discovery process which has occurred here constitutes an obstruction with the Court's management of civil cases and a substantial obstruction to the public's interest in the expeditious and just resolution of litigation. *Id.* at 639.

21. It is abundantly clear that defendants have made little effort in answering plaintiff's discovery. Defendants should not be able to escape answering discovery by tendering the discovery to a person with no knowledge base. As a result, plaintiff is missing important discovery which, when produced, may result in the need to re-depose individuals. The plaintiff should not have to incur this burden or cost.

WHEREFORE, plaintiff respectfully requests this Court to enter the following Order:

A. Compel the defendants to answer interrogatory numbers 12, 13 and 14 and produce all relevant documentation.

B. Compel Newell Window Furnishings, Inc. to respond to all written discovery.

C. Compel the defendants to identify all individuals who were consulted in answering the written discovery by giving their name, address, position and dates of employment.

D. To enter sanctions in the amount of the costs incurred by the plaintiffs in bringing this motion and having to depose individuals without this discovery.

Respectfully submitted,

JAMES E. DAHL, 0568724
PAUL BONADIES, 6206589
JAMES E. DAHL & ASSOCIATES
225 West Washington Street, #1125
Chicago, IL 60606, 312/641-3245

MARK WACHHOLZ, as Administrator of the Estate of Alex Wachholz

By: _____
One of His Attorneys

11

*See Case File for Exhibits*