UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK WACHHOLZ, as Administrator of the Estate of Alex Wachholz, on his behalf and on behalf of his wife, JILL WACHHOLZ and his children, MEGAN WACHHOLZ and MARLEIGHA LOSSIN, minors, and as father and next friend of MEGAN WACHHOLZ, <br> Plaintiffs, <br> v. <br> LEVOLOR HOME FASHIONS, INC.; NEWELL WINDOW FURNISHINGS, INC. LEVOLOR HOME FASHIONS, a division of Newell Window Furnishings, Inc.; and HABITAT WALLPAPER AND BLINDS, INC., <br> Defendants. | **FILED** <br> DEC 20 2002 WF <br> MICHAEL W. DOBBINS <br> CLERK, U.S. DISTRICT COURT <br><br> NO. 01 C 0698 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Geraldine Soat Brown |

## NOTICE OF FILING

TO: Joseph J. Krasovec III
Dan Overbey
Schiff, Hardin & Waite
Sears Tower, #6600
Chicago, IL 60606
VIA FAX: 312/258-5600

PLEASE TAKE NOTICE that we have this 20th day of December, 2002, filed with the Clerk of the United States District Court, Illinois, the following: **"Plaintiffs' Supplemental Memorandum In Support Of Its Motion To Compel And For Sanctions"**

JAMES E. DAHL & ASSOCIATES
225 West Washington Street, Suite 1125
Chicago, Illinois 60606
312/641-3245

*James E. Dahl + Associates*
Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE BY FAX AND MAIL

The undersigned, being first duly sworn on oath, states that she served the foregoing document on the above-named attorneys of record by facsimile and by placing a true and correct copy in the U.S. Mail chute at 225 West Washington Street, Chicago, Illinois on December 20, 2002.

*Shari Santelli*

SUBSCRIBED AND SWORN
to before me this 20th day of
December 2002

*Lisa M Odeh*
NOTARY PUBLIC

OFFICIAL SEAL
[illegible]
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-10-2004

DOCKETED
DEC 23 2002

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK WACHHOLZ, as Administrator )
of the Estate of Alex Wachholz, )
on his behalf and on behalf of his wife, )
JILL WACHHOLZ and his children, )
MEGAN WACHHOLZ and )
MARLEIGHA LOSSIN, minors, )
and as father and next friend of )
MEGAN WACHHOLZ, )
)
                  Plaintiffs, )
)
v. )    NO. 01 C 0698
)
)    Judge Robert W. Gettleman
LEVOLOR HOME FASHIONS, INC.; )
NEWELL WINDOW FURNISHINGS, INC. )    Magistrate Judge Geraldine Soat Brown
LEVOLOR HOME FASHIONS, a division of )
Newell Window Furnishings, Inc.; and )
HABITAT WALLPAPER AND )
BLINDS, INC., )
)
                  Defendants. )

FILED
DEC 20 2002 WF
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN
## SUPPORT OF THEIR MOTION TO COMPEL AND FOR SANCTIONS

On November 12, 2002, plaintiffs filed a Motion to Compel and for Sanctions against defendants. The motion was brought after plaintiffs took the deposition of Mr. Mark Weppner, who was the former Product Manager of Levolor for the time period of January 1994 through April 1997. At his deposition, Mr. Weppner testified that there were two entities that were retained by Levolor to develop and design devices to eliminate the loop from pull cords on blinds. Mr. Weppner also testified that defendant Newell Window Furnishings, Inc. was manufacturing its own blinds and studying and

1

evaluating safety devices separate and apart from Levolor. None of this information had been provided to the plaintiffs by the defendants prior to Mr. Weppner's deposition.

On November 26, 2002, in response to plaintiffs' motion, defendants provided a certification from Mr. Allen Ireland stating that all documents within the possession, custody and control of Newell Window Furnishings, Inc. were searched with respect to plaintiffs' First Request for Production of Documents. (Attached as Exhibit 1 is a copy of the Certification.) Attached to the Certification was a blueprint of a device entitled "cord release tassel" that was dated December 2, 1994. The "cord release tassel" relates to a device designed to eliminate the hazards of a looped pull cord. This document would have been extremely important for the depositions that plaintiffs have already taken since it pre-dates the manufacturing of the blind at issue. The court should sanction defendants for the cost they will incur to re-depose individuals based on this document and the costs for having to bring this motion.

Furthermore, plaintiffs' motion to compel requests that Newell Window Furnishings, Inc. respond to plaintiffs' document request. After taking the deposition of Mr. Ireland, it is abundantly clear that Newell has still not responded to plaintiffs' discovery. In light of this deposition testimony, which is set forth below, this Court should order that an officer of Newell certify that it has responded to all of plaintiffs' discovery requests. This Court should also award sanctions to the plaintiffs for the cost in having to take Mr. Ireland's deposition and the costs incurred in bringing this motion.

# ARGUMENT

## DEFENDANTS' FAILURE TO PRODUCE THE BLUEPRINT ATTACHED TO THE CERTIFICATION IS SANCTIONABLE

As stated in plaintiffs' motion, on April 30, 1993, Newell Operating Company purchased Levolor Company. In November 1994, Newell Operating Company transferred these assets and liabilities to Newell Operating Company's subsidiary, Newell Window Furnishings. Thereafter, Newell Window Furnishings used these assets to operate Levolor Home Fashions which is a division of Newell Window Furnishings, Inc. In August of 1995, the Wachholzes purchased the bind at issue in this litigation which was manufactured by Levolor in August of 1995. In January 2000, Alex Wachholz strangled to death in the loop of the pull cord of the blind.

Attached to the Certification of Allen Ireland is a blueprint by Newell Window Furnishing dated December 2, 1994 for a "cord release tassel". The plaintiffs have repeatedly requested that defendants produce all documents pertaining to any device or method designed to reduce access to or eliminate cord loops from window blinds. The "cord release tassel" fits within this category. The plaintiffs have taken numerous depositions of current and former employees of Levolor without having the benefit of this blueprint. Obviously, in a product liability action, such a device is relevant as to notice concerning the dangerous condition of the looped pull cord as well as any possible devices which could have remedied the dangerous condition. Plaintiffs are now in the position of having deposed several individuals without the benefit of questioning these

individuals on this device. The defendants should be sanctioned for the costs the plaintiffs will incur in having to re-depose individuals as well as the costs to bring this motion.

II

## DEFENDANTS HAVE STILL NOT MADE REASONABLE EFFORTS TO RESPOND TO PLAINTIFFS' DISCOVERY

One of the possible reasons for defendants not having produced the blueprint is the lack of effort made by the defendants in responding to plaintiffs' discovery. Several individuals that have been deposed and still need to be deposed are former employees of Levolor. Levolor has taken the position that it has no requirement to contact these former employees, even though they know their identity, to gather information relevant to plaintiffs' discovery requests. This places the plaintiffs in the situation of deposing these former employees only to later learn in a deposition that Levolor had not fully produced its discovery. This is exactly what happened with Mr. Weppner's deposition. If plaintiffs had not taken Mr. Weppner's deposition and had not brought the motion at issue, the blueprint which is attached to the Certification would never have been produced. Plaintiffs should not have to do defendants' job in answering discovery. As the court stated in Hogue v. Fruehauf Corporation, 151 F.R.D. 635 (C.D. Illinois 1993):

> The very integrity of the civil justice system depends on compliance with the discovery rules. Discovery cannot be a game of hide and seek. Our discovery system depends in large part on self-reporting. When discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully. Id. at 639.

It is obvious that the defendants do not agree with such a rule. This is evident by the employees that the defendants have had answer the plaintiffs' discovery including Mr. Allen Ireland who certified Newell's response even though he has always been affiliated with Levolor. At his deposition, Mr. Ireland stated that he had been an Administrative Assistant to the engineering department for Levolor since 1997 and then in April 2001, his title changed to the New Product Development Coordinator because the engineering department changed its name to New Product Development (Ireland Dep., Exhibit 2, pp. 10-11). Mr. Ireland's duties consisted of all administrative tasks for the department including filing, faxing, mail delivery, and mail distribution (Ireland Dep., Ex. 2, p. 8).

Mr. Ireland then testified that his search for documents in response to Plaintiffs' First Request for Production of Documents consisted of "sending an e-mail to various engineers, marketing personnel and finance personnel requesting that they turn over any and all documents pertaining to this case" (Ireland Dep., Ex. 2, p. 16). However, Mr. Ireland was unable to remember what the e-mail stated in detail, he no longer has a copy of that e-mail, and he was also unable to recall all of the people that the e-mail was sent to (Ireland Dep., Ex. 2, pp. 16-17). Mr. Ireland never contacted Mr. Mark Weppner with respect to the search for documents in response to Plaintiffs' First Request for Production of Documents (Ireland Dep., Ex. 2, p.26). Mr. Ireland never contacted any former

employee of Levolor in response to any of the discovery requests made by the plaintiffs in this lawsuit (Ireland Dep., Ex. 2, pp. 39-40). Mr. Ireland received the documents from various people, and then he simply turned them over to Roger Palmer (Ireland Dep., Ex. 2, pp. 21-22).

Furthermore, in his Certification, Mr. Ireland states that all of the documents within the possession, custody and control of Newell Window Furnishings, Inc. were searched to respond to plaintiffs' discovery. However, in his deposition, Mr. Ireland stated as follows:

- that the offices of Newell Window Furnishings, Inc. are not in the same place as Levolor (Ireland Dep., Ex. 2, p. 34);

- that he did not know where the offices of Newell Window Furnishings, Inc. were located (Ireland Dep., Ex. 2, p. 35);

- that he did not contact anyone at Newell Window Furnishings, Inc. about production of documents regarding this lawsuit (Ireland Dep., Ex. 2, p. 35);

- that the reason why he did not contact anyone at Newell Window Furnishings, Inc. about production of documents for this lawsuit was that he was never asked to (Ireland Dep., Ex. 2, p. 35).

The only basis for Mr. Ireland's statement concerning the production of the Newell Window Furnishings, Inc. documents was that his director at one time, Mr. Rich Coulcher, told him that documents were transferred from Newell Window Furnishings, Inc. to Levolor Home Fashions (Ireland Dep., Ex. 2, p. 38). However, Mr. Ireland does not recall seeing any new documents coming from Newell Window Furnishings, Inc.

(Ireland Dep., Ex. 2, p. 38) and did no independent verification as to whether documents that were produced in this lawsuit came from Newell Window Furnishings, Inc. (Ireland Dep., Ex. 2, p. 39). Moreover, the e-mail that was sent out by Mr. Ireland was never sent to anyone at Newell Window Furnishings, Inc. (Ireland Dep., Ex. 2, p. 50).

It is well established that the rules concerning response to discovery require that the corporation select an officer or employee to gather and obtain from books, records, other officers or employees or other sources, the information necessary to answer the interrogatories and sign them on behalf of the corporation, not himself. In Re Folding Carton Anti-Trust Litigation, 76 F.R.D. 417 (N.D. Ill 1977). It is clear that the defendants have not met the burden. Mr. Ireland is not and never has been affiliated with Newell Window Furnishings. Mr. Ireland testified that he never contacted anyone at Newell Window Furnishings, Inc. Mr. Ireland then certified that all of the documents from Newell Window Furnishings, Inc. have been searched. How could Mr. Ireland possibly make such a statement if Newell Window Furnishings, Inc. never received the request for documents and he made no contact with Newell Window Furnishings, Inc. to produce its documents. Clearly, the defendants have not made reasonable efforts to respond to plaintiffs' discovery.

One case that is instructive with respect to this issue is General Dynamics Corporation v. Selb Manufacturing Company, 481 F.2d 1204 (8th Cir. 1973). In General Dynamics, plaintiff brought a fraud and breach of contract action against Selb with respect to their manufacturing parts for air force airplanes. In the lawsuit, plaintiff filed interrogatories to Selb. In responding to the interrogatories, an agent of Selb, Mr. Frey,

7

answered that he "had insufficient personal knowledge upon which he could base an answer and there is no other present employees of officer available to answer." Based on this response, the trial court eventually struck Selb's affirmative defense and counter-claim. In affirming the trial court, the appellate court found as follows:

> As agent of Selb, Frey was obligated to furnish all information available to the corporation, which responsibility was not limited by his own personal knowledge of the situation. More specifically, knowledge of officers and employees of Selb Manufacturing, relative to subject matter of the instant cause is imputed to the corporation itself. Thus Frey was duty bound to secure all information available to Selb. This would include information within the personal knowledge of former Selb employees, employed by Selb at the time this action commenced. Additionally, it would include information possessed by its corporate counsel. Selb failed to demonstrate that the corporation lacked information sufficient to answer the interrogatories. 481 F.2d at 1210.

Likewise, in this case, defendants have failed to establish that they have taken reasonable steps to secure all of the information available in response to plaintiffs' discovery requests. This is established by the testimony of Allen Ireland who testified that he never contacted anyone at Newell Window Furnishings, Inc. regarding plaintiffs' discovery requests, nor did he contact any former employees of Levolor, whether employed at the time this lawsuit was commenced or before. In light of this blatant disregard towards plaintiffs' discovery requests, defendants should be compelled by this Court to:

A. Identify all employees who have been contacted to respond to plaintiffs' discovery by stating their name, dates of employment and last known address;

B. Defendant Newell Window Furnishings, Inc. should provide a Certification from an officer of the company that it has responded to plaintiffs' discovery; and

8

C. Plaintiffs should be awarded sanctions for the cost incurred to depose Mr. Ireland and the cost to bring this motion.

                                          Respectfully submitted,

JAMES E. DAHL, 0568724          MARK WACHHOLZ, as Administrator
PAUL BONADIES, 6206589        of the Estate of Alex Wachholz,
JAMES E. DAHL & ASSOCIATES
225 West Washington Street, #1125   By: _____
Chicago, IL 60606, 312/641-3245        One of His Attorneys

9

See Case File For Exhibits